UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DONALD MCMULLEN                                         CIVIL ACTION

VERSUS                                                  NO. 12-1206

BP EXPLORATION & PRODUCTION, ET AL.                     SECTION "L" (2)


ORDER AND REASONS

The Court has pending before it Defendant NALCO's motion for summary judgment (Rec. Doc. 31) and motion in limine (Rec. Doc. 33). The Court has reviewed the briefs and the applicable law and heard oral argument, and now issues this Order and Reasons.

I. BACKGROUND

This is a negligence case arising out of injuries to Plaintiff Donald McMullen. Plaintiff alleges that he sustained a lower back injury while servicing a tote containing NALCO company ("NALCO") chemicals while working for Danos & Curole on the BP THUNDER HORSE (a production platform in the Gulf of Mexico). Plaintiff claims that NALCO was negligent under Louisiana Civil Code Articles 2315 and 2317.1. Plaintiff alleges his injury occurred on or about May 24, 2011, when he was required to change multiple todo fittings on the NALCO chemical totes aboard the platform. Plaintiff alleges that both NALCO's continuous failure to apply the proper tote fittings and the location of the totes on the platform were negligent and seeks to hold NALCO liable for damages.

II. PRESENT MOTIONS

First, NALCO moves for summary judgment against Plaintiff. (Rec. Doc. 31). NALCO asserts that Plaintiff's Louisiana Civil Code Article 2317.1 negligence claim fails as a matter of

law because NALCO did not have custody of either the totes or the BP THUNDER HORSE. NALCO further claims that Plaintiff's Louisiana Civil Code Article 2315 negligence claim fails as a matter of law for two reasons. First, NALCO owed Plaintiff no duty with respect to Plaintiff's place of work. Second, even if NALCO owed Plaintiff a duty, the conditions that Plaintiff has complained of were ordinary and acceptable hazards of offshore work that were "open and obvious" to all. Therefore, NALCO had no duty to warn Plaintiff of the alleged hazard posed by the totes.

Plaintiff opposes the motion. (Rec. Doc. 38). With respect to his 2315 claim, Plaintiff asserts that NALCO has a duty not to provide third parties with defective products such as chemical totes with improper fittings. Plaintiff further asserts that the open and obvious exception is not applicable to this case because while the existence of defective totes may have been open and obvious, the danger that they posed was neither open nor obvious to Plaintiff. With respect to his 2317.1 claim, Plaintiff asserts that custody is a broader concept than ownership and may be shared by multiple parties. Citing Louisiana case law, Plaintiff asserts that NALCO had legal custody over the totes when the injury occurred.

Second, Nalco submits a motion in limine regarding Plaintiff's proposed experts. (Rec. Doc. 33). Nalco argues that the experts' testimony encompasses both matters of common sense and impermissible legal conclusions, and therefore, the Court should exclude it from trial. Plaintiff opposes the motion and argues that his experts' testimony will assist the jury at trial because it provides more complex information, including valid fact-based conclusions relating to causation.

**III.    LAW & ANALYSIS**

**A.    Motion for Summary Judgment**

    **1.    Standard on Motions for Summary Judgment**

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24; Fed. R. Civ. P. 56(e)).  The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

Partial summary judgment dismissing only certain claims is appropriate under the same standards. *See* Fed. R. Civ. P. 56(d).

## 2.  Analysis

### a.  Negligence under Louisiana Civil Code Article 2317.1

Plaintiff asserts that NALCO is negligent under a theory of custodial liability found in Louisiana Civil Code Article 2317.1. *See Theard v. Ankor Energy, LLC*, 2012 WL 1398439 at *2 (E.D. La. April 23, 2012). "In order to prevail on a custodial liability claim, a plaintiff must demonstrate: '(1) the object was in the defendant's custody; (2) the thing contained a vice or defect which presented an unreasonable risk of harm to others; (3) the defective conditions caused the damage; and (4) the defendant knew or should have known of the defect.'" *Id.* at *2 (quoting *Cormer v. Dolgencorp, Inc.*, 136 Fed. Appx. 627, 627-28 (5th Cir. 2005) (citing La. C.C. arts. 2317 and 2317.1)). The Court's analysis is limited to the issue raised in NALCO's motion for summary judgment: did NALCO have custody of the tote when Plaintiff's alleged injury too place?

Custody is a "'broader concept than ownership . . . [and] may be shared by multiple parties.'" *Marshall v. Air Liquide-Big Three, Inc.*, 107 So.3d 13, 39 (La.App. 4 Cir. 9/7/12) (quoting *Graubarth v. French Market Corp.*, 970 So.2d 660, 664 (La.App. 4 Cir. 10/24/07)). To determine whether custody is shared, "the factfinder 'looks to the parties' actions and relationships to the thing that caused the injury.'" *Id*. (emphasis added). The test for determining custody is two-fold: "1) whether the person bears such a relationship as to have the right of direction or control over the thing, and 2) what, if any, kind of benefit the person derives from the thing." *Id*. However, "custody will not be shared . . . when there is a limited ability to inspect

the premises, limited access to enter the premises, and an inability to alter the premises." *Marshall*, 107 So.3d at 39 (quoting *Graubarth*, 970 So.2d at 664-65).

NALCO asserts that it cannot be held liable under 2317.1 because when it delivers its totes for transportation by BP to the BP THUNDER HORSE, it abandons legal custody of the totes. Whether NALCO retained legal custody of the totes after they are delivered is a matter of dispute. For example, NALCO admits that it "will occasionally have an employee on the structure" to provide "support services" regarding the chemical concentrations of their allegedly abandoned totes. (Rec. Doc. 31). Plaintiff further asserts that BP returned the totes to NALCO after using them so that NALCO could refill them with chemicals. A jury may determine that both NALCO's relationship to the delivered totes and the benefits that it derives from them are insufficient to establish legal custody under 2317.1. However, that will be a question for the jury to decide.

In sum, the evidence, when viewed in its entirety and in a light most favorable to the plaintiff, may allow a reasonable jury to find that NALCO retained legal custody of the totes on the BP THUNDER HORSE. Therefore, the Court will deny NALCO's motion for summary judgment with respect to Plaintiff's 2317.1 claim.

        b.        **Negligence under Louisiana Civil Code Article 2315**

Plaintiff asserts that NALCO is negligent under Louisiana Civil Code Article 2315. (Rec. Doc. 38). In determining fault under Article 2315, courts apply a duty-risk analysis comrpising five factors. *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So.2d 627, 632 (La. 2006). Under this analysis, the court requires the plaintiff to prove: "(1) the defendant had a duty to conform his conduct to a specific standard (the duty standard); (2) the defendant's conduct failed to conform

to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element)." *Id.* at 633 (citing *Fowler v. Roberts*, 556 So.2d 1, 4 (La. 1989), *reh'g granted on other grounds and original opinion reinstated as supplemented*, 556 So.2d at 13 (La. 1990)). Only the first element, otherwise referred to as the "duty standard," is a question of law. *See Smith v. Chevron U.S.A., Inc.*, 1999 WL 615174 (E.D. La. 1999) (citing *Mundy v. Dept. of Health and Human Resources*, 620 So.2d 811, 813 (La. 1993)). The court's analysis is once again limited to the question raised in NALCO's motion for summary judgment: did NALCO owe Plaintiff a duty under Article 2315?

     NALCO argues that because it was not Plaintiff's employer, it had no duty to provide him with a safe place to work, and it is therefore not liable for any injuries that Plaintiff may have suffered as a result of the placement of the totes or the design of the BP THUNDER HORSE. The problem with NALCO's assertion that it does not owe Plaintiff a duty is twofold. First, it misstates Plaintiff's theory of negligence. Plaintiff does not dispute NALCO's claim that because it did not employ Plaintiff, it was under no obligation to provide him with a safe place to work. Plaintiff's 2315 claim is not based upon any assertion that he was an employee of NALCO. Instead, Plaintiff's claim is that NALCO negligently provided BP with improperly fitted totes, creating an unreasonable risk of harm to Plaintiff. Therefore, under Plaintiff's reasoning, NALCO is liable for the back injury that Plaintiff suffered refitting totes that should have been properly fitted by NALCO before being shipped. On this issue, NALCO fails to

satisfy its burden as a party moving for summary judgment.

Second, much of NALCO's argument does not relate to whether a duty is owed, but whether NALCO breached that duty, a fact question best reserved for the fact finder. *See Smith*, 1999 WL 615174 at *3 (citing *Mundy*, 620 So.2d at 813). NALCO claims to have played "no role whatsoever in [either] where BP decided to place the totes on the BP THUNDER HORSE . . . [or] how the BP THUNDER HORSE was designed." (Rec. Doc. 38). Yet not only are these two arguments based on facts that will likely be disputed at trial, but also NALCO's willingness to engage in such arguments is premised upon an acknowledgment that a duty exists. In other words, it does not matter what role NALCO played in the placement of the totes or the design of the rig if it did not owe Plaintiff a duty. While claiming that it does not have a duty, NALCO actually asserts that it did not breach its duty, a factual determination best settled at trial.

Moreover, *Nuckley v. Cox Cable New Orleans Inc*., 527 So.2d 414 (La. App. 4 Cir. 6/7/98), establishes that a corporation cannot abandon its duty simply by delivering its product to the customer. In *Nuckley*, the court affirmed the district court's judgment against Cox Cable, holding that Cox negligently installed its television cable and that it was therefore liable for the injuries that were a result of Cox's negligence. *Id.* In a separate case, the Louisiana Supreme Court noted *in dicta* that while it was unclear whether the negligent defendant owned the property upon which his negligent acts took place,"[w]here plaintiffs prove that a defendant is the actor directly responsible for the creation of an unreasonable risk of harm which causes injury, *regardless of the location*, that defendant may, depending on the results of a duty-risk analysis, be held liable as the tortfeasor." *Fontenot v. Fontenot*, 635 So.2d 219, 222 n.8 (La. 1994). Without addressing *Fontenot* or *Nuckley*, NALCO has asked the court to believe that any

duty it may have had was abandoned the moment it delivered its totes to BP.  The law does not support this conclusion.

NALCO asserts that even if it owed a duty to Plaintiff, changing tote fittings is an ordinary and acceptable hazard of offshore work that is "open and obvious to all." (Rec. Doc. 31). In essence, NALCO only owed Plaintiff a duty to protect against "unreasonably dangerous condition[s]." *See Ardoin v. Lewisburg Water System*, 963 So.2d 1049, 1052 (La.App. 3 Cir. 7/18/07). Due to the "open and obvious" nature of the totes, NALCO argues that they are not "unreasonably dangerous" and therefore NALCO has no duty as a matter of law. *Id*.

*Ardoin* involved a plaintiff who claimed that the defendant negligently left its water meter covers off the meters, causing her to trip over one of the covers and suffer injuries. *Id*. The defendant claimed that the plaintiff had lived at the apartment complex where the injury took place for four years prior to the accident, had walked through the subject passageway numerous times, and acknowledged that the meter covers were "always off them." *Id*. at 1052. The plaintiff even admitted that on the day of the injury, she "saw the water meters" and recognized that "three of the covers were off." *Id*.  The court held that the water meters and their covers presented "an obvious condition which should have been and was observed" by the plaintiff, and therefore, defendant had no duty to protect against such a hazard. *Id*.

*George v. Nabors Offshore Corp.*, 464 Fed.Appx. 298 (5th Cir. 2012), is another example of the court's refusal to hold a defendant liable for injuries that are the result of an "open and obvious" hazard. In *George*, the plaintiff was injured while working for the defendant on an offshore platform. *Id*. With respect to the hoses that the *George* plaintiff tripped over, the plaintiff admitted that he "saw [them], knew they posed a possible danger, and knew that he had

8

to cross them with caution." *Id*. at 301. In affirming the district court's grant of summary judgment, the court stated that the danger posed by the hoses was obvious to plaintiff, who had "eighteen years of experience on offshore platforms." *Id*. at 300-01.

In both *Ardoin* and *George*, the court ruled that the *danger* was open and obvious to the plaintiff. But a plaintiff's acknowledgment of a particular *instrumentality* does not, in and of itself, make its hazardous nature "open and obvious." In *Ardoin*, the court ruled that it was open and obvious to the plaintiff that if she did not avoid the meter covers, she would suffer injuries. In *George*, the court ruled that it was open and obvious to the plaintiff that if he did not avoid the hoses, he could suffer injuries. In this case, there is nothing to suggest that Plaintiff was aware that if he changed NALCO's tote fittings, he could suffer back injuries. In fact, Plaintiff asserts that he did not believe changing NALCO's tote fittings was unsafe. (Rec. Doc. 38). Unlike the hose in *Ardoin* or the meter tops in *George*, the totes in the present case did not allegedly create a tripping hazard or another truly obvious danger. Instead, Plaintiff alleges that NALCO's negligent failure to properly fit the totes that it shipped ultimately caused Plaintiff to suffer injuries to his back. Plaintiff testified that he believed he could change NALCO's todo fittings safely and had done so without incident over 50 times. (Rec. Doc. 31). This fact presents a significant distinction from *Ardoin* and *George*.

The Court recognizes that it is debatable whether NALCO's failure to properly fit its totes represents an unreasonable risk of harm. A reasonable jury may very well conclude that even if NALCO's improperly fitted totes posed a danger, that danger cannot be described as unreasonable. However, as the Court described *supra*, in deciding NALCO's motion for summary judgment, the Court must weigh all of the evidence in a light most favorable to the

9

Plaintiff. The Court's summary judgment jurisprudence therefore demands that Plaintiff's claims go to trial. For this reason, the Court will deny NALCO's motion for summary judgment with respect to Plaintiff's Article 2315 claim.

**B.      Motion in Limine**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

According to the Advisory Committee Notes to Rule 702, "whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." The Fifth Circuit has held that expert testimony should be excluded if the Court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990). In addition, the Fifth Circuit has held that, "the trial judge ought to insist that the proffered expert bring to the jury more than the lawyers can offer in argument." *In re Aircraft Disaster at New Orleans, Louisiana*, 795 F.2d 1230, 1233 (5th Cir. 1986). "There is no more a certain test for determining when experts may be used than the commonsense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed. R. Evid. 702, Advisory Committee Note.

NALCO's motion in limine asks the Court to exclude the testimony of Plaintiff's

proposed experts, Gregg and Garrett Perkin. Plaintiff's experts have submitted a report describing the BP Thunder Horse Platform, the chemical totes and fittings involved in the alleged accident, and Plaintiff's duties with respect to the totes. The report also describes the ergonomics and biomechanics involved in Plaintiff's task of replacing the fittings.

NALCO argues that the Court should exclude Perkins' testimony because it will not assist the jury; rather, the jury can use its own common sense and experience to determine whether Plaintiff's job (replacing the tote fittings) was unreasonably dangerous, and whether NALCO was liable for that alleged danger. NALCO also suggests that the report contains impermissible legal conclusions. In support of this argument, NALCO relies mainly on two cases. First, NALCO cites the Fifth Circuit's holding in *Peters v. Five Star Marine Service*, 898 F.2d 448 (5th Cir. 1990), that the district court correctly excluded expert testimony relating to whether it was reasonable to require the plaintiff to move heavy equipment while on heavy seas, whether cargo was properly secured or loose, and whether a boat's deck was slippery due to spilled fuel, because the jury could use common sense and experience to decide those issues. *Id.* at 449-50. Second, NALCO cites this Court's prior decision to exclude expert testimony relating to whether "lifting large sacks is 'unreasonably dangerous'" on the grounds that this issue was "not a complex scientific or technical conclusion for which an expert may explain intricate concepts or jargon," but rather was a "common sense determination that the jury need not be presented with expert testimony to decide." *Alvardo v. Diamond Offshore Management Co.*, Civil Action No. 11-25, 2011 WL 4948031, at *3 (E.D. La. Oct. 18, 2011) (Fallon, J.).

In opposition to NALCO's motion, Plaintiff argues that his experts will be helpful to the jury, mainly because the jury will not be familiar with oil platforms, chemical totes, or todo

fittings. Moreover, Plaintiff emphasizes that his experts discuss technical issues such as biomechanics. Generally, Plaintiff distinguishes the cases cited by NALCO as involving much simpler and more straightforward facts and issues. Plaintiff also emphasizes his experts' extensive experience with the subject matter in their report, as well as their past qualification as expert witnesses in federal court.

The Court agrees with Plaintiff that his proposed expert testimony will be helpful to the jury in this case. While a jury may be familiar with slippery substances and the safety of moving heavy equipment, issues of ergonomic and biomechanic safety are far less intuitive and are based on more technical information. Moreover, the jury in this case is unlikely to be familiar with offshore rigs generally or chemical totes specifically, and Plaintiff's proposed expert will be helpful in providing the jury with the background they will need to understand the evidence presented at trial. Finally, the Court agrees with Plaintiff that his experts' opinions on causation are properly fact-based, and thus within the domain of expert testimony. Accordingly, the Court will deny NALCO's motion in limine.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that NALCO's motion for summary judgment (Rec. Doc. 31) is DENIED. IT IS FURTHER ORDERED that NALCO's motion in limine (Rec. Doc. 33) is DENIED.

New Orleans, Louisiana, this 10th day of June, 2013.

_____
UNITED STATES DISTRICT JUDGE